GLORIA P. DE GONZÁLEZ and EDUARDO G. GONZÁLEZ, Petitioners, *v.* TAX COURT OF PUERTO RICO, Respondent; TREASURER OF PUERTO RICO, Intervener.

No. 264. Argued November 8, 1951.—Decided January 16, 1952.

*Brown, Newsom & Córdova* for petitioners. *Víctor Gutiérrez Franqui, Attorney General,* and *José A. García Malpica, Assistant Attorney General,* for intervener, respondent in the main action.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Twenty-one years ago the corporation Bruno & González operated in San Juan. It was engaged in the exhibition of motion pictures produced by Paramount, Metro and Columbia, in the Rialto, Capitol and Tres Banderas theaters which it held under lease. Julio R. Bruno and Eduardo G. González were its sole stockholders. At that time Rafael Ramos Cobián was likewise engaged in an identical business and showed Fox, R.K.O., Universal and United Artists pic-

tures in the Olimpo, Fox, Liberty and Victoria theaters which he also held under lease. Due to the competition between them, both businesses were in a precarious situation. To avoid financial disaster, they decided to associate and organized the corporation United Theaters, Inc., to which they contributed all of their assets and liabilities, their lease contracts and their respective rights to show the motion pictures of the aforesaid producers. The new corporation having been organized, 250 shares of United Theaters, Inc., were delivered both to Bruno and to González [1] and 500 to Ramos Cobián, with a par value of $100 per share.

Time passed and eight years later González and his wife sold their 250 shares of United Theaters, Inc., to Ramos Cobián for $25,000. For that year (1939) Mr. and Mrs. González filed separate returns and declared no income on account of that sale. Subsequently and within the statutory period the Treasurer of Puerto Rico sent them both notices of deficiencies arising out of the sale of the aforesaid shares. The Treasurer believed that said shares had cost Mr. and Mrs. González nothing and, he claimed, that in selling them for $25,000, each one obtained a net profit of $12,500. The taxpayers moved for reconsideration and for the proper administrative hearing. The Treasurer ratified his view and they resorted to the Tax Court where, after hearing oral and documentary evidence, it was decided that: the value, either at par, in the books, or any other value of the United Theaters shares upon acquiring the business of Bruno & González in 1931, does not, nor can it represent the *cost* of said shares to the taxpayers; the shares cost them one half of what Bruno & González delivered to United Theaters therefor, and if in accordance with the position assumed by the respondent, Bruno & González gave in exchange for the United Theaters shares liabilities exceeding the assets by $12,241.20, obviously the shares did not cost petitioners a thing, wherefore upon selling them later for $25,000 they

---

[1] Nothing was given to the corporation Bruno & González proper.

made a net profit in said amount, and if this were so respondent's position would have to be upheld.

The lower court went on saying that the evidence, nevertheless, had convinced it that besides the assets amounting to $33,464.10, consisting in furniture and fixtures, Bruno & González conveyed to United Theaters certain lease rights, to wit: of the Capitol, Tres Banderas and Rialto theaters, expiring in 8, 7 and 5 years, respectively; that it did not doubt that, being a most essential factor in the operation and business of motion-picture houses, said leases constituted a credit in favor of Bruno & González which formed part of the assets conveyed; and that if the value of said leases plus the amount of the assets did not exceed the liabilities, respondent's determination need not be disturbed, but that if on the contrary the former exceeded the latter then the *cost* of the shares to Bruno & González should be an amount equal to the difference, and one half thereof to each one of the petitioners.

The lower court pointed out, moreover, that the petitioners, through their expert witness Adolfo López Capó, added the amount of $75,000 to the assets of United Theaters, at which figure they assessed all the leases held by said entity, which included those assigned to it by Bruno & González of the Rialto, Capitol and Tres Banderas theaters; that the amount of $75,000 considered by the expert to assess the shares, was the value of the leases in possession of United Theaters, as part of its own assets, said entity operating the business in a larger scale and being more powerful than the firm Bruno & González when the latter assigned those leases in the midst of a competitive situation; and that since the court rejected the system followed by the petitioners to fix the cost of their shares because it was incorrect, it found itself devoid of any basis in the record to fix the cash value of the leases, not having even proof of the rents involved in said leases which might enable it to determine the value of the leases for the unexpired period.

The lower court considered that the problem was merely to fix the cash value of those intangible lease rights. It stated that "in our judgment it would be unfair to the plaintiff [2] if we dismissed his complaint as a whole, being certain, as we are, that those leases, with an additional value, formed part of the assets he assigned to United Theaters, because of the fact that we are unable now to reduce said value to dollars and cents." After setting forth the foregoing the court decided the case as one for declaratory judgment and decreed:

"(a) That in order to determine the profit obtained by the plaintiff from the 1939 sale of the 250 shares he received from United Theaters in 1931, we must find out whether there was a surplus between the assets and the liabilities conveyed by the firm Bruno & González in 1931 to United Theaters, one half of the difference, if any, corresponding to said plaintiff; and

"(b) That as part of the conveyed assets of Bruno & González there must be included the value, at that time, of the leases of the Capitol, Tres Banderas and Rialto theaters, for the still unexpired term of each lease."

It also granted the petitioners a period of twenty days to submit in writing the cost of their shares in conformity with the foregoing, notifying the respondent thereof.

Within the term granted the petitioners appeared in writing and stated that the value of the leases of the Capitol, Tres Banderas and Rialto theaters in possession of Bruno & González was $40,000 which sum together with the assets amounting to $33,464.10, representing furniture and fixtures, and after deducting the debts and obligations of said corporation amounting to $45,705.30, left a remainder of $27,758.80 as the surplus of the assets over the liabilities of the extinct corporation. From said amount, according to the document filed, $13,879.40 belonged to the petitioners.

The respondent objected and the court set a date to hear the parties. In the hearing finally held on November 14,

---

[2] The petitioners filed separate complaints in the lower court. That is why the court refers to the "plaintiff."

1950, the parties stipulated, as appears from the minutes thereof signed by the Assistant Clerk and included in the record,[3] that if Messrs. Rafael Ramos Cobián and Eduardo G. González testified they would state that the value of the leases of the Capitol and Rialto (*sic*) theaters was made up as follows: $35,000 belonged to Ramos Cobián and $40,000 to Bruno & González, thus submitting the case for decision on the evidence presented by the parties in the previous hearings as to the value of the shares. The lower court then rendered a decision setting forth that since the petitioners had confined themselves to stipulating what the aforesaid witnesses would testify, it considered that they "have not proved satisfactorily, so as to enable us to annul the actions of the defendant, the value of those leases, and consequently, the cost of their shares," and that "there is not even evidence of the rental involved in said lease contracts, as one of many factors determining the value of the unexpired leases."

To review said decision we granted special certiorari under § 6 of Act No. 328 of May 13, 1949, (Sess. Laws, pp. 996, 1004.)

■ In the first place the petitioners Gloria P. de González and Eduardo G. González insist that the correct basis to determine their profits when in 1939 they sold their 250 United Theaters, Inc., shares for $25,000 was the value of said shares when they acquired them and not the value of their shares in the Bruno & González corporation in the year that they conveyed them for the 250 United Theaters Inc., shares. In discussing the preceding contention they claim that when the conveyance took place, "a taxable event arose if the original cost of petitioners Bruno & González shares was less than the value of the United Theaters, Inc., shares" and that it was during 1931 that it should have been de-

---

[3] There is no other evidence in the record of said stipulation except, of course, the reference made thereto in the order of the lower court dated November 29, 1950.

termined whether they made any profit upon receiving the new shares, and that said profit should have been fixed "taking into consideration the original cost of the shares compared with the market value of United Theaters, Inc., shares at that time."

In reply to that contention the Treasurer avers that a "reorganization" having taken place under the provisions of several subdivisions of § 6 of the Income Tax Act—No. 74 of August 6, 1925, (Sess. Laws, p. 400)—such contention is erroneous and that pursuant to the provisions of said Section no taxable event arose in 1931.

It is indeed unnecessary to determine whether or not a taxable event arose in 1931 or whether on the contrary a reorganization took place. If the value of the leases of the Capitol, Rialto and Tres Banderas theaters held by Bruno & González was the same ($40,000) before as well as after the corporation United Theaters, Inc., was constituted, logic indicates that as to the leases the petitioners admit that the creation of the new entity did not alter the affairs of either corporation. Furthermore, although the organization of United Theaters ended the competition between Bruno & González and Ramos Cobián, there is nothing in the record to show that in 1931 United Theaters shares had a value different from that of the shares of the extinct corporation Bruno & González. Hence, we need not decide whether or not a taxable event arose in said year when the petitioners acquired the new shares, since the final result, as we have seen, would always be the same.

 As a second premise the petitioners maintain in the alternative that "asuming that the correct test to determine petitioners' profit upon selling in 1939 their United Theaters, Inc., shares were the test determined by the Tax Court, namely, the value in 1931 of their Bruno & González shares, then the court had sufficient evidence to uphold petitioners' document fixing the cost of said shares in the sum of $13,879.40."

It will be recalled that at the new hearing the parties stipulated that if Messrs. Ramos Cobián and González testified they would declare that the value of the leases of the Rialto, Capitol and Tres Banderas theaters held by the extinct corporation Bruno & González in 1931 was $40,000. The Tax Court, nevertheless, in rendering its decision ignored the terms of the stipulation and pointed out that it deemed that the petitioners "have not proved satisfactorily, so as to enable us to annul the actions of the defendant, the value of those leases, and consequently, the cost of their shares," there not being "even evidence of the rental involved in said lease contracts, as one of many factors determining the value of the unexpired leases." We do not think that the lower court committed that error either.

As Judge Learned Hand of the United States Court of Appeals for the Second Circuit said in *Bryant* v. *Commissioner of Internal Revenue* (1935), 76 F. 2d 103, 105:

". . . the weight of any evidence is to be determined by the Tribunal charged with a decision on the facts. But it does not follow because the Board need not accept the experts' opinions, that it might refuse to give the property any value whatever. Both these witnesses swore that the realty was worth over $60,000; it seems to us to be beyond reason and arbitrary to throw it out of the account entirely. In such cases though it be impossible to reach a certain conclusion, it has been several times held that the Board should exercise a sound judgment, though taking all chances against the taxpayer. (Citations.) We are quite aware that the result will be speculative, but the Treasury will be protected and some relief is juster than the denial of all."

We are in complete accord with the views expressed by such an eminent jurist. According to said views the Tax Court ought to have given some value, if they had any, to the leases held by Bruno & González. However, there is a presumption in law to the effect that every tax determination made by the Treasurer is presumed to be correct and that it is incumbent on the taxpayer to overcome such presumption.

*Treasurer* v. *Tax Court and Destilería Serrallés,* 70 P.R.R. 210, 214. In the case at bar it is unquestionable that the petitioners did not offer sufficient evidence to overcome such presumption. We have seen that the liabilities of the corporation Bruno & González exceeded its assets and that the value of the leases it held when dealing with the new corporation was not modified in any manner whatsoever because of the conveyance. On the other hand, there was a complete lack of evidence as to the rental to be paid for each one of the theaters possessed, or of the profits made either in each or in all of them for the year 1931, if any. Taking all of this into consideration and in the light of the situation prevailing in Puerto Rico at that time, the court was able to conclude, despite the expert evidence it heard regarding the leases, that the value of the latter in possession of Bruno & González as well as of United Theaters when the transaction often referred to took place was nil and that when eight years later the petitioners sold the United Theaters 250 shares said petitioners obtained a net profit of $25,000, share and share alike. It can not be said, therefore, that under such circumstances the lower court committed the error assigned.

The decision appealed from will be affirmed.

---

Mr. Chief Justice Todd, Jr., dissenting.

I dissent. Under the authority of *Bryant* v. *Commissioner of Internal Revenue,* 76 F. 2d 103, and other cases therein cited, I believe the Tax Court of Puerto Rico erred, in view of the evidence, in not giving the value that it considered reasonable to the leases held by Bruno & González at the time the transaction with United Theaters, Inc., took place. I can not agree with the reasoning that the Tax Court, despite the uncontroverted expert evidence, could conclude that the value of the leases was nil.

The decision appealed from should be reversed and the case remanded for further proceedings.